# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 15, 2013

Lyle W. Cayce
Clerk

No. 12-40895

ADRIAN VERDIN,

Plaintiff—Appellant,

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION; WELLS FARGO BANK, N.A.,

Defendants—Appellees.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:10-CV-590

Before ELROD and HIGGINSON, Circuit Judges, and MARTINEZ, District Judge.[*]

PER CURIAM:[**]

Wells Fargo Bank, N.A. ("Wells Fargo") foreclosed on Adrian Verdin's home and sold it to the Federal National Mortgage Association ("Fannie Mae"). Verdin sued Wells Fargo and Fannie Mae ("Defendants") alleging various state-law causes of action. The district court granted Defendants' Rule 12(b)(6) motion

---

[*] District Judge of the Western District of Texas, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40895

on Verdin's negligent-misrepresentation and gross-negligence claims and granted Defendants' motion for summary judgment on Verdin's remaining claims. We AFFIRM.

I.

Wells Fargo extended Verdin a loan for the purchase of a Plano, Texas residence (the "Property"). The loan was evidenced by a fixed-rate note (the "Note") and secured by a deed of trust (jointly referred to as the "Loan Agreement"). Verdin defaulted on the Note when he did not make the required payments for March and April of 2010. Wells Fargo mailed Verdin notice of his default, but he neither cured his default nor made the May and June payments. Wells Fargo accelerated the Note and scheduled a foreclosure sale on August 3, 2010. In early July, Wells Fargo informed Verdin that he could reinstate the Note by paying $21,371, the total amount due and owing at that time.

On July 27, exactly one-week prior to the scheduled foreclosure sale, Verdin called Wells Fargo to discuss his options. Verdin alleges that during this conversation, he requested the amount needed to reinstate the Note and explained that he found a potential buyer willing to purchase the Property. According to Verdin, Wells Fargo responded by telling him "not to worry about the foreclosure" and to submit a request for postponement of the foreclosure sale. Wells Fargo received Verdin's request for postponement on July 30. In it, Verdin requested that Wells Fargo "stop the foreclosure procedures so that [he could] pursue the sale of the [Property]." On August 2, Verdin called Wells Fargo to inquire about the status of the foreclosure sale. Wells Fargo told him that the sale had not been postponed.

No. 12-40895

Approximately forty minutes before the scheduled foreclosure sale on August 3, Verdin called Wells Fargo to ask if the foreclosure sale had been postponed. Wells Fargo informed Verdin that, to postpone the sale, he must produce proof of payoff funds totaling exactly $22,179.68, the current amount due and owing on the Note. Verdin did not produce the required proof of payoff funds, and Wells Fargo sold the Property to Fannie Mae.

Verdin sued Defendants in Texas state court, and Defendants removed the case to the United States District Court for the Eastern District of Texas. The district court dismissed Verdin's negligent-misrepresentation and gross-negligence[1] claims under Federal Rule of Civil Procedure 12(b)(6). The district court also granted Defendants' motion for summary judgment on Verdin's claims for breach of contract, anticipatory breach of contract, unreasonable collection efforts, violations of the Texas Debt Collection Act ("TDCA"), quiet title, and trespass to try title. Verdin timely filed a notice of appeal.

## II.

We review *de novo* the district court's order granting Defendants' Rule 12(b)(6) motion on Verdin's negligent-misrepresentation claim. *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) (citation omitted). To prove a negligent-misrepresentation claim in Texas, Verdin must establish, inter alia, that Defendants supplied him with "false information" and that he suffered pecuniary loss in reliance on that information. *Horizon Shipbuilding, Inc. v. BLyn II Holding, L.L.C.*, 324 S.W.3d 840, 850 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citation omitted). Here, Verdin failed to plead facts establishing either element.

---

[1] Verdin did not pursue his gross-negligence claim on appeal.

No. 12-40895

Under Texas law, "the misrepresentation at issue must be one of existing fact." *BCY Water Supply Corp. v. Residential Invs., Inc.*, 170 S.W.3d 596, 603 (Tex. App.—Tyler 2005, pet. denied). "A promise to do or refrain from doing an act in the future is not actionable." *Id.*; *see also Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.—Amarillo 2007, no pet.). Wells Fargo's only allegedly false representation—that Verdin should submit a request for postponement and "not worry about the foreclosure"—relates to a promise to do something in the future. This representation is not one of existing fact and is not actionable under Texas law.

Even if Defendants supplied Verdin with false information, Texas requires pecuniary loss independent from the loan agreement to support a negligent-misrepresentation claim. *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998) (citation omitted). Mental anguish does not qualify as pecuniary loss. *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442–43 (Tex. 1991). Here, Verdin has merely alleged losses relating to the Loan Agreement and mental anguish. Therefore, the district court did not err by dismissing Verdin's negligent-misrepresentation claim.

III.

The district court granted Defendant's motion for summary judgment on Verdin's remaining claims. We review a grant of summary judgment *de novo*, applying the same standard as the district court and viewing the evidence in the light most favorable to the nonmoving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010). We address each of Verdin's remaining claims in turn.

No. 12-40895

Verdin alleges Wells Fargo breached the Loan Agreement by (1) failing to provide Verdin an updated amount to reinstate the Note, and (2) pursuing foreclosure of the Property after waiving its right to foreclose. To begin, the Loan Agreement does not require Wells Fargo to provide updates on the exact payment amount required to reinstate the Note;[2] therefore, Verdin's claim fails on that ground. Next, to waive its contractual right to foreclose, Wells Fargo must have either intended to relinquish its right or intentionally engaged in conduct inconsistent with that right. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Waiver by implication only occurs when conclusive evidence shows the party unequivocally manifests its intention to no longer assert its right. *G.H. Bass & Co. v. Dalsan Props.–Abilene*, 885 S.W.2d 572, 577 (Tex. App.—Dallas 1994, no writ) ("[I]t is the burden of the party who is to benefit by a showing of waiver to produce conclusive evidence that the opposite party [unequivocally] manifested its intent to no longer assert its claim. This is a particularly onerous burden." (internal quotation marks and citation omitted)). Although Wells Fargo's alleged statement that Verdin should not "worry about the foreclosure" is inconsistent with its right to foreclose, it falls short of being an unequivocal manifestation of Wells Fargo's intent to forego that right.

Verdin also alleges that Wells Fargo anticipatorily breached the Loan Agreement. To prevail on this claim, Verdin must prove "(1) an absolute repudiation of [an] obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388,

---

[2] The Loan Agreement requires Wells Fargo to provide the borrower notice "of the right to reinstate after acceleration" and allows the borrower to reinstate the Note "at any time prior to . . . five days before sale of the Property," but does not impose any contractual obligation on Wells Fargo to calculate the reinstatement figure for the borrower.

5

No. 12-40895

394 (5th Cir. 2004).  Here, Verdin is unable to demonstrate that Wells Fargo made an absolute repudiation of an obligation because providing mixed signals of an intent to foreclose—i.e., suggesting that it would consider a postponement and not to worry about a foreclosure—does not rise to an absolute declaration of intent to abandon an obligation.  *See, e.g.*, *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010) (concluding that a bank's conflicting messages regarding the status of a loan "[fell] short of the positive and unconditional repudiation necessary to maintain a cause of action for anticipatory breach").[3]

Verdin next alleges Wells Fargo used unreasonable collection efforts to collect on its debt.  Although the elements of such a claim are not clearly defined and may vary from case to case under Texas law, all plaintiffs must show that the defendant's conduct "was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008, no pet.) (citation omitted).  Simply put, the record does not contain any facts that would support a finding that Wells Fargo's actions constituted "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Id.*

Verdin also maintains that Wells Fargo violated § 392.304(a)(19) § 392.304(a)(8), § 392.303(a)(2), and § 392.301(a)(8) of the TDCA.  Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from "using any other false representation or deceptive means to collect a debt."  Tex. Fin.

---

[3] Because each of Verdin's breach-of-contract claims fails, there is no basis to conclude that the foreclosure sale is void.  Accordingly, Verdin is unable to establish that he has superior title to the Property and, therefore, his suit to quiet title and trespass-to-try-title actions also fail.

No. 12-40895

Code § 392.304(a)(19). "To violate the TDCA using a misrepresentation, 'the debt collector must have made an *affirmative statement* that was false or misleading.'" *Kruse v. Bank of N. Y. Mellon*, — F.Supp.2d —, 2013 WL 1294088, at \*2 (N.D. Tex. Apr. 1, 2013) (quoting *Hassell v. Bank of Am., N.A.,* Civ. A. H-12-1530, 2013 WL 211154, at \*4 (S.D. Tex. Jan. 18, 2013)). Here, even assuming Wells Fargo told Verdin "not to worry about the foreclosure," Verdin does not allege that Wells Fargo made an affirmative statement that it would forgo foreclosure. Accordingly, the district court did not err in concluding that Wells Fargo's statement "not to worry about the foreclosure" did not constitute a violation of § 392.304(a)(19). Moreover, "'[r]efusing to provide a payoff quote is not an affirmative misrepresentation of the amount of debt.'" *Hassell*, 2013 WL 211154, at \*4 (quoting *Nolasco v. CitiMortgage, Inc.*, Civ. A. No. H-12-1875, 2012 WL 3648414, at \*6 (S.D. Tex. Aug. 23, 2012)). Accordingly, Verdin's claims under both §§ 392.304(a)(8) and (19) fail.

Verdin's claim under § 392.303(a)(2) also fails because the Loan Agreement expressly authorizes Wells Fargo to demand fees and charges in the event of a default. Finally, Verdin's claim under § 392.301(a)(8) fails because the Loan Agreement vested Wells Fargo's right to accelerate and foreclose upon Verdin's nonperformance. Moreover, the TDCA does not prohibit a creditor from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3).[4]

IV.

For the foregoing reasons, the district court's orders granting Defendant's motions to dismiss and for summary judgment are AFFIRMED.

---

[4] Verdin's request for an accounting and for declaratory judgment both fail because the district court properly disposed of his underlying substantive claims.