## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2014

Lyle W. Cayce
Clerk

No. 13-10233

DONALD WILLIAMS; JACQUELINE WILLIAMS,

Plaintiffs - Appellants

v.

WELLS FARGO BANK, N.A.,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-1253

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit
Judges.

PER CURIAM:*

Donald and Jacqueline Williams brought suit against Wells Fargo Bank
alleging a variety of claims pertaining to the bank's foreclosure on the
Williamses' property. The district court granted Wells Fargo's motion to
dismiss all but one of their claims. The remaining claim was later dismissed
on Wells Fargo's motion for summary judgment. The Williamses appeal the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 13-10233

dismissal of all their claims and also allege error in the district court's grant of attorneys' fees for Wells Fargo.  We AFFIRM.

FACTUAL & PROCEDURAL BACKGROUND

Donald Williams, before his marriage to Jacqueline Williams, purchased property in Desoto, Texas in August 2001.  He executed a promissory note payable to Fieldstone Mortgage Company.  In 2003, after their marriage, Donald Williams executed a note in order to refinance the property with Wells Fargo.  Both Donald and Jacqueline Williams signed a deed of trust to secure payment of the note.  The deed of trust contained a provision that property taxes and insurance would be escrowed with Wells Fargo.  They executed a separate escrow waiver, which allowed them to make the tax and insurance payments themselves but required them to provide evidence of such payments within thirty days of any request by Wells Fargo.  The deed of trust provided that if the real estate taxes or insurance premiums were not paid, Wells Fargo could do so and seek reimbursement.  Until late 2008 or early 2009, all payments required by the deed of trust were made.

Donald Williams lost his job in April 2009.  He contacted Wells Fargo to inquire about making a partial payment on the loan.  Wells Fargo notified him that it had paid the Williamses' 2008 real estate taxes and insurance after discovering they had failed to do so.  The escrow waiver was therefore cancelled, and the Williamses were told they needed to include a stated amount for the escrow as part of all future mortgage payments.  Wells Fargo considered the Williamses in default and sent a foreclosure notice in May 2009.  In June, Donald Williams filed for bankruptcy and the foreclosure was stayed.  Late in 2009, Williams dismissed his bankruptcy filing and contacted Wells Fargo about obtaining a modification of their loan.  The bank said they should send an application for a modification along with a hardship letter.  The Williamses

2

allege that from February through May of 2010, they contacted Wells Fargo every two weeks to check on the loan modification, each time being told that no decision had been made.

In May, Donald Williams claims he had a phone conversation with Wells Fargo informing him that he had been approved for a modification in the amount of $3,600 per month. He also alleges, though, that he did not accept the modification and instead requested a second review for a lower payment that did not include escrow items. This alleged modification offer was never reflected in any writing. The Williamses remained delinquent and received a second foreclosure notice from Wells Fargo in August 2010. Donald Williams filed for bankruptcy again, but he later withdrew the petition and requested a modification of the loan. The Williamses allege Wells Fargo never responded to the second request for modification. In January 2011, the Williamses received a third notice of foreclosure from Wells Fargo's counsel, stating that a foreclosure sale had been set for February 1, 2011.

On January 28, 2011, the Williamses sent Wells Fargo's foreclosure counsel a Qualified Written Request ("QWR") and dispute of debt requesting that Wells Fargo postpone the foreclosure sale. The Williamses received a written response on February 1 verifying the indebtedness and claiming that no dispute of debt existed. Wells Fargo foreclosed on February 1. After the sale, the Williamses sent a second letter to the foreclosing attorney as well as a letter to Wells Fargo disputing the debt. Wells Fargo responded on March 3, acknowledging receipt of the first letter and dispute of debt. On March 7, the bank sent a confirmation that the foreclosure proceedings were complete. On March 28, Wells Fargo served the Williamses with an original petition for forcible detainer. At a hearing, the Williamses argued that the forcible detainer should be denied based on a dispute of title and of debt, and because Wells Fargo failed to provide documents in response to written requests.

No. 13-10233

Judgment was granted for Wells Fargo and the Williamses appealed to a county court. The Williamses then filed the present suit in state court. In the suit was a request for abatement of the county court appeal pending resolution of the new lawsuit. Wells Fargo removed the second suit to the United States District Court for the Northern District of Texas based on the court's diversity jurisdiction. Wells Fargo moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The motion was granted except for one of the Williamses' claims. The remaining claim was later dismissed on Wells Fargo's motion for summary judgment after the Williamses failed to respond to Wells Fargo's request for admissions.

After judgment, Wells Fargo filed a request for attorneys' fees under Federal Rule of Civil Procedure 54(d)(2). The court awarded Wells Fargo fees in the amount of $47,835.42. The Williamses timely appealed.


DISCUSSION

Except where a matter is governed by federal law, a federal district court sitting in a diversity case has the obligation to apply the law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The forum state here is Texas. "To determine Texas law, we look to decisions of the state's highest court, or in the absence of a final decision by that court on the issue under consideration, we must determine in [our] best judgment, how the state's highest court would resolve the issue if presented with it." *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011)(quotation marks omitted; alteration in original). Opinions by a state's lower courts provide guidance on how a state's highest court would resolve the issue. *Am. Nat. Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir. 2001). A decision by an intermediate state appellate court should not "be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would

decide otherwise." *West v. AT&T*, 311 U.S. 223, 237 (1940). Where we rely on Texas Courts of Appeals' opinions, we have determined "not [to] depart from their holdings" because we find them "to be consistent with Texas precedent and probative of how the Texas Supreme Court would decide the issue in this case." *Am. Nat. Gen. Ins. Co.*, 274 F.3d at 328-29.

### I.     *Wells Fargo's motion to dismiss*

We review *de novo* a district court's grant of a motion to dismiss under Rule 12(b)(6). *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The dismissed claims included breach of contract, wrongful foreclosure, unreasonable collections efforts, violations of the Texas Debt Collection Act ("TDCA") and Real Estate Settlement Procedure Act ("RESPA"), and negligent misrepresentation. The court also dismissed the claims to quiet title, trespass to try title, and equitable requests for accounting and declaratory judgment. We will review the dismissal of each claim.

### a. *Breach of contract & wrongful foreclosure*

The Williamses argued Wells Fargo breached two separate contracts, the deed of trust and underlying note, and a unilateral contract for loan modification. A breach of contract action under Texas law includes these elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. — Houston [1st Dist.] 2001, no pet.)). The Williamses argue Wells Fargo breached the deed of trust by deliberately or negligently accelerating the note and foreclosing on

their property.  It has been held that a claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached. *See Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 732 (E.D. Tex. 2011). The Williamses' pleadings failed to identify which provision of the deed of trust Wells Fargo allegedly breached.  Moreover, if, as here, plaintiffs fail to allege they were current on their payments under the deed of trust, dismissal of their breach of contract claim is proper.  *See Marsh v. JPMorgan Chase Bank, N.A.*, 888 F. Supp. 2d 805, 815 (W.D. Tex. 2012).  Accordingly, the Williamses failed to state a claim for breach of the deed of trust.

On appeal, the Williamses offer a new theory to support their breach of contract claim.  They argue that Wells Fargo breached the deed of trust by paying their property taxes and force-placing insurance on the property.  "As a general rule, an appellate court will not consider a new issue raised for the first time on appeal for the purpose of reversing the lower court's judgment." *City of Waco, Tex. v. Bridges*, 710 F.2d 220, 227 (5th Cir. 1983).  Because the Williamses did not make this argument to the district court as a basis for their breach of contract claim against Wells Fargo, we will not consider it now.  The Williamses did argue to the district court that Wells Fargo violated the TDCA by paying their property taxes and force-placing insurance.  We will discuss those allegations later as we discuss the TDCA issues.

As to the Williamses' claim for breach of the unilateral contract for loan modification, we conclude any alleged oral promise or agreement to modify the Williamses' loan is unenforceable under the statute of frauds.  In Texas, a loan agreement in which the amount involved exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound.  TEX BUS. & COM. CODE ANN. § 26.02(b).  The statute of frauds also applies to preclude enforcement of oral modifications to loan agreements. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013).

No. 13-10233

Also without merit is the argument that the estoppel exception to the statute of frauds is applicable. In order for that exception to apply, there must have been a promise to sign a written agreement that had been prepared and would itself satisfy the statute of frauds. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982). The claim that Wells Fargo said the Williamses had been approved for a modification in the amount of $3,600 a month does not include an allegation there was a modification agreement "that had already been prepared or 'whose wording had been agreed upon' that would satisfy the statute of frauds." *1001 McKinney Ltd. v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App. — Houston [14th Dist.] 2005, pet. denied) (quoting *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 769 (5th Cir. 1988)). Therefore, the allegation is insufficient.

The Williamses' argument for application of the partial performance equitable exception to the statute of frauds likewise fails. Under Texas law, the statute of frauds applies to partially performed oral contracts only if denial of enforcement would amount to a virtual fraud. *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App. — Dallas 2002, pet. denied). The acts of part performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Id.* The Williamses' actions in applying for a loan modification, dismissing the bankruptcy filings, and failing to take action to prevent the foreclosure sale do not unequivocally corroborate the fact of any alleged oral loan modification contract. The Williamses have not claimed acts of part performance that "could have been done with no other design than to fulfill the" loan modification agreement. *Id.* at 439-40. The district court did not err in dismissing the Williamses' claim for breach of the alleged unilateral contract for loan modification.

7

No. 13-10233

The Williamses also state a claim for anticipatory breach of contract, contending Wells Fargo repudiated its obligation to modify their loan after telling the Williamses they had been approved.  Claims for anticipatory breach of contract require: "(1) an absolute repudiation of an obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party." *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004).  Because any alleged promise by Wells Fargo to modify the Williamses' loan is barred by the statute of frauds, the Williamses cannot demonstrate Wells Fargo was under any enforceable obligation to modify their loan.  Accordingly, Wells Fargo's failure to modify the Williamses' loan did not constitute an absolute repudiation of an obligation.

The Williamses argue Wells Fargo's inconsistent conduct constituted a waiver of its contractual right to foreclose on the Williamses' property.  "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).  The intent to relinquish the right must be unequivocally manifested and is the "key element in establishing waiver." *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 748 (E.D. Tex. 2013).  Wells Fargo's actions delaying foreclosure and expressing a willingness to modify the Williamses' loan agreement do not manifest an intent by Wells Fargo to waive its right to foreclose. *See Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 810 (N.D. Tex. 2012).  Moreover, the deed of trust expressly provided that extensions of time for payment or delays in exercising its right to foreclose under the deed of trust would not constitute a waiver of Wells Fargo's rights and remedies in the event of default.

8

No. 13-10233

### b. *Unreasonable collection efforts & TDCA claims*

An unreasonable collection effort is an intentional tort when there was "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. — Dallas 2008, no pet.). A claim for unreasonable collection efforts is viable in Texas if a lender attempts to collect a debt that is not owed. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (citing, *e.g.*, *EMC Mortg.*, 252 S.W.3d at 868-69). At most, the Williamses disputed the amount of the debt but not that they were in default. *See DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 625 (N.D. Tex. 2011). Further, the Williamses have not alleged conduct by Wells Fargo amounting to harassment intended to inflict mental anguish or bodily harm. The court did not err in dismissing the Williamses' claim for unreasonable collection efforts.

The Williamses' TDCA claims allege violations of Texas Finance Code Sections 392.301(a)(8), 392.303(a)(2), and 392.304(a)(19) and (a)(8). Three of the claims were resolved on the grant of a motion to dismiss, while the fourth was rejected on summary judgment.

Section 392.301(a)(8) prohibits a debt collector from using threats, coercion, or attempts to coerce by "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8). The Williamses argue that the foreclosure sale was an action prohibited by law, basing this allegation largely on their contentions that Wells Fargo waived its right to foreclose and did not comply with the deed of trust. Because the claims that Wells Fargo breached the deed of trust, did not have the right to foreclose, or took any other action prohibited by law fail, the Williamses have not pled facts sufficient to suggest Wells Fargo violated Section 392.301(a)(8).

9

No. 13-10233

Section 392.303(a)(2) bars a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2). The Williamses make the conclusory allegation that Wells Fargo "imposed numerous charges" and that any charges associated with the foreclosure were "unfair and unconscionable." They also contend that their account was assessed wrongful charges related to taxes and insurance on the property. The district court concluded the Williamses failed to allege that the imposition of any of the charges was not authorized by the parties' agreement or not legally chargeable to them. We agree that the Williamses' general assertion of "wrongful charges" is insufficient to state a claim under Section 392.303(a)(2).

Finally, Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from using any other false representation or deceptive means to collect a debt. TEX. FIN. CODE § 392.304(a)(19). The Williamses allege Wells Fargo used deceptive means to collect their debt through foreclosure after telling them they would be considered for a loan modification. Further, the Williamses contend Wells Fargo violated this provision by failing to notify them of the status of their second loan modification request. "To violate the TDCA using a misrepresentation, 'the debt collector must have made an *affirmative statement* that was false or misleading.'" *Kruse v. Bank of New York Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013).

The Williamses have not alleged that Wells Fargo made a false or misleading assertion that it would modify their loan or forgo foreclosure. *See Verdin v. Federal Nat. Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013). The pleadings do nothing more than allege Wells Fargo represented it would consider the Williamses' request for a loan modification, made an oral offer for

10

modification which the Williamses refused, and failed to respond to the Williamses' subsequent requests for modification. This does not amount to an allegation of a false or misleading assertion sufficient to state a claim under Section 392.304(a)(19). *See id.* Further, the statute of frauds acts to bar certain claims of misrepresentation under the TDCA. *Kruse*, 936 F. Supp. 2d at 794-95. The Williamses have not alleged any damages outside of the alleged oral agreement to modify their loan or any other factual misrepresentation independent of the oral loan modification which we have already determined to be barred by the statute of frauds. *Id.* "To allow Plaintiffs to recover under the TDCA would be to 'allow [them] to do indirectly what [they] could not by law do directly.'" *Id.* at 795 (citation omitted). The Williamses failed to state a claim under Section 392.304(a)(19).

### c. *Violation of RESPA*

The Williamses alleged Wells Fargo violated Section 2605(e) of RESPA for failing to make a proper response to their correspondence regarding the dispute of debt. Section 2605(e) describes the duty of a loan servicer to respond to borrower inquiries and provides that if a "servicer of a federally related mortgage loan receives a qualified written request [QWR] . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). To constitute a QWR, the correspondence from the borrower must enable the servicer to identify the name and account of the borrower, include a statement of the reasons for the borrower's belief that the account is in error, or provide sufficient detail to the servicer regarding other information sought by the borrower. *Id.* § 2605(e)(1)(B). Within thirty days of receipt of a QWR the servicer must either make appropriate corrections to the borrower's account or, after investigation, provide a written explanation including a statement of

reasons the servicer believes the account is correct or any other information requested by the borrower. *Id.* § 2605(e)(2).

To state a viable claim under Section 2605(e), the Williamses had to plead that their correspondence met the requirements of a QWR, that Wells Fargo failed to make a timely response, and that this failure caused them actual damages. 12 U.S.C. § 2605(e), (f); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012) ("A plaintiff must allege actual damages resulting from a violation of § 2605."). The Williamses contend they first sent a QWR to Wells Fargo's foreclosure counsel on January 28 requesting the foreclosure sale be postponed until Wells Fargo investigated their dispute of debt and produced requested documents. Counsel responded on February 1 — within the five day RESPA period — expressly stating it was responding to the Williamses' January 28 correspondence, verifying the indebtedness with a copy of the Deed of Trust, and advising them their correspondence did not contain any information to suggest a valid dispute existed. We agree with the district court's conclusion that the Williamses sufficiently alleged their correspondence of January 28 constituted a QWR but failed to allege facts indicating Wells Fargo's response was insufficient under RESPA. *See* 12 U.S.C. § 2605(e)(1)(A), (B). The Williamses also failed to plead that Wells Fargo's alleged failure to respond caused them actual damage.

The Williamses sent a second letter to Wells Fargo's foreclosure counsel on February 25, and the same letter to Wells Fargo on March 25. They allege Wells Fargo failed to respond until April 8. The Williamses have failed to allege, however, that the communications of February and March complied with Section 2605(e)'s requirements for a QWR. *See Hurd*, 880 F. Supp. 2d at 768. The Williamses have also failed to plead facts indicating how Wells Fargo's failure to respond resulted in actual damages. In fact, the Williamses

sent their second purported QWR at least three weeks after their property had already been sold at a foreclosure sale.

### d.  Negligent misrepresentation

The tort of negligent misrepresentation contains these elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, (2) the defendant supplies '"false information" for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App. — Houston [14th Dist.] 2010, no pet.).  The Williamses contend they justifiably relied on Wells Fargo's negligent misrepresentations regarding the status of their loan, modification, and foreclosure sale.

Specifically, the Williamses argue Wells Fargo made negligent misrepresentations by asking them to send documentation for a loan modification, telling them they had been approved for a modification in the amount of $3,600 per month, and failing to respond to their second request for a loan modification.  The district court concluded, and we agree, that the Williamses failed to allege they relied on Wells Fargo's representations to their detriment.  *See Sgroe*, 941 F. Supp. 2d at 750-51.  We find no error in the court's dismissal of the Williamses' claim for negligent misrepresentation.

### e.  Quiet title & Trespass to try title

To recover on a quiet title or a trespass to try title action, a "plaintiff must recover upon the strength of his own title."  *See Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. — Corpus Christi 2001, no pet.) (quiet title); *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994) (trespass to try title). These claims hinge on the Williamses' contention that Wells Fargo had no right

to foreclose, making the foreclosure sale void.  Because we have concluded that Wells Fargo did not breach the deed of trust, waive its right to foreclose, or otherwise conduct a wrongful foreclosure, the Williamses cannot prove the superiority of their title.  The district court did not err in dismissing the Williamses' quiet title and trespass to try title claims.

### f.  *Accounting & Declaratory judgment*

The Williamses sought an accounting for all amounts paid and owed to Wells Fargo.  "A suit for accounting is generally founded in equity," and whether to grant "an accounting is within the discretion of the trial court." *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App. — San Antonio 1994, writ denied).  Accounting is appropriate when "the facts and accounts presented are so complex adequate relief may not be obtained at law." *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App. — Houston [14th Dist.] 2002, pet. denied).  The Williamses have alleged no facts suggesting the information they seek is complex such that the district court abused its discretion in denying their request for accounting.

A declaratory judgment is remedial in nature.  Our conclusion that each of the Williamses' causes of action was properly dismissed likewise warrants affirmance of the court's dismissal of their request for declaratory judgment. *See Sgroe*, 941 F. Supp. 2d at 752 (declaratory judgment "provides no relief unless there is a justiciable controversy between the parties").


### II.  *Wells Fargo's motion for summary judgment*

"We review a grant of summary judgment de novo, applying the same legal standards as do the district courts." *Vuncannon v. United States*, 711 F.3d 536, 538 (5th Cir. 2013).  Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

The district court concluded the Williamses' TDCA claim for violation of Section 392.304(a)(8) was sufficiently pled to survive Wells Fargo's motion to dismiss. That provision prohibits a debt collector from "misrepresenting the character, extent, or amount of consumer debt . . . ." TEX. FIN. CODE. § 392.304(a)(8). The Williamses claimed that through its communications and demands, Wells Fargo misrepresented the amounts owed by the Williamses on their loan and imposed wrongful charges to their account. They supported this claim by contending Wells Fargo force-placed insurance and taxes on their property when their 2009 taxes were not delinquent and they had insurance, and that Wells Fargo did not credit the charges or late fees associated with the force-placed insurance and taxes.

The parties proceeded to discovery. Wells Fargo served its first request for admissions in January 2012. The Williamses failed to respond by the thirty-day deadline, causing all requested admissions to be deemed admitted. *See* FED. R. CIV. P. 36(a)(3). The admissions included that the Williamses failed to maintain insurance on the property or pay their taxes at the relevant times, and that Wells Fargo acted properly under the deed of trust in requesting reimbursement for its payment of the Williamses' insurance and taxes. The court also concluded that an affidavit submitted by the Williamses at summary judgment and averring they had paid their taxes, could not be used to contradict the Rule 36 admissions. The admissions resulted in the court concluding there was no triable issue and granting summary judgment for Wells Fargo. The Williamses' primary argument on appeal is that they should have been allowed to withdraw the admissions.

Under Rule 36(a), a matter in a request for admissions is deemed admitted unless the party to whom the request is directed answers or objects to the matter within thirty days. *Hulsey v. State of Tex.*, 929 F.2d 168, 171 (5th Cir. 1991). Rule 36 admissions are conclusive as to the matters admitted and

cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the record. *Id.* We have "stressed that a deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). To withdraw an admission, Rule 36(b) requires that court to find that withdrawal "1) would serve the presentation of the case on its merits, but 2) would not prejudice the party that obtained the admissions in its presentation of the case." *Id.* Even if a party establishes these two factors, the district court retains discretion to deny a request to withdraw an admission, and admissions on file may be an appropriate basis for granting summary judgment. *Id.* at 419-20. We review a district court's decision to permit the withdrawal of an admission for abuse of discretion. *Id.* at 419.

The Williamses failed to move for withdrawal of the admissions pursuant to Rule 36(b). They did not challenge the admissions until making the challenge part of their response to Wells Fargo's motion for summary judgment on July 16, 2012, over four months after the deadline to make the request. Further, the Williamses have failed to argue that withdrawal of the admissions would not prejudice Wells Fargo. On the other hand, Wells Fargo contends it would be prejudiced by the withdrawal because at the time of the Williamses' request, discovery had been closed, the dispositive motion deadline had passed, Wells Fargo had filed its motion for summary judgment, and trial was set to take place in three weeks. Because the Williamses failed to move for withdrawal under Rule 36(b), were not diligent in seeking relief, and have failed to demonstrate how withdrawal of the admissions will aid presentation of their case while not prejudicing Wells Fargo, we conclude the district court did not abuse its discretion in denying the Williamses' request to withdraw the admissions. The court also did not err in determining that the Williamses'

affidavit could not be used to overcome the Rule 36 admissions at the summary judgment stage. *See In re Carney*, 258 F.3d at 420.

Having affirmed the denial of the Williamses' request to withdraw the admissions, we also conclude it was not error for the court to grant summary judgment on the remaining TDCA claim. The Williamses' admissions conclusively establish that Wells Fargo did not misrepresent the amount or extent of the Williamses' debt by wrongfully imposing charges to their account.

### III.   *Attorneys' fees*

After the district court dismissed all of the Williamses' claims and entered judgment for Wells Fargo, Wells Fargo moved for attorneys' fees pursuant to Federal Rule of Civil Procedure 54(d)(2), claiming the note and deed of trust provided for the recovery of fees. The district court determined that the deed of trust did provide for the recovery of attorneys' fees and ordered the Williamses to pay fees to Wells Fargo in the amount of $47,835.42.

"Generally under Texas law, attorney's fees and litigation expenses may not be recovered unless provided for by statute or by contract between the parties." *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs. Inc.*, 612 F.3d 800, 807 (5th Cir. 2010). We review "an award or denial of attorneys' fees provided for by contract for abuse of discretion." *McDonald's Corp. v. Watson*, 69 F.3d 36, 45 (5th Cir. 1995). "Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees that it has when applying a statute allowing for a discretionary award." *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980). A district court "abuses its discretion if it awards contractually-authorized attorneys' fees under circumstances that make the award inequitable or unreasonable . . . ." *McDonald's Corp.*, 69 F.3d at 46.

No. 13-10233

The Williamses argue that the court erred in allowing Wells Fargo to move for attorneys' fees post-judgment under Rule 54(d)(2). Instead, they argue that attorneys' fees provided for by contract must be proven at trial as an element of damages. Claims for attorneys' fees "must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." FED. R. CIV. P. 54(d)(2)(A). The Williamses did not dispute the deed of trust allowed for recovery of attorneys' fees but objected to Rule 54(d)(2) as the vehicle for the fees when they are provided by contract. This argument is foreclosed by a recent opinion concluding that nothing indicates "that Rule 54(d)(2) is always off-limits to attorney's fees provided by contract." *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1039 (5th Cir. 2014). The panel in *Richardson* considered recovery of attorneys' fees under Rule 54(d)(2) when the fees were provided by the terms of a deed of trust similar to the one at issue here. *Id.* at 1040. Wells Fargo's motion for attorneys' fees under Rule 54(d)(2) was permissible.

The Williamses next argue that the court abused its discretion because the award of attorneys' fees in this case was inequitable. No evidence or precedent is presented to support the argument. We conclude the district court did not abuse its discretion in awarding Wells Fargo attorneys' fees.

AFFIRMED.