# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40931
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 26, 2015

Lyle W. Cayce
Clerk

RAYMOND RABE; IRMA RABE,

Plaintiffs–Appellants,

v.

WELLS FARGO BANK, N.A.,

Defendant–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
U.S.D.C. No. 4:11-CV-787

Before PRADO, OWEN, and GRAVES, Circuit Judges.

PER CURIAM:*

Plaintiffs–Appellants Raymond and Irma Rabe sued Defendant–Appellee Wells Fargo Bank, N.A. for breach of contract and violations of the Texas Finance Code in connection with the bank's foreclosure on their property. The district court granted summary judgment to Wells Fargo on all of the Rabes' claims. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40931

## I. BACKGROUND

In April 2002, Plaintiffs–Appellants Raymond and Irma Rabe executed a mortgage note for the property at 758 Holly Oak Drive in Lewisville, Texas, in favor of Mortgage Resource Group, L.L.C. (MRG). The note was secured by a deed of trust, also in favor of MRG. MRG assigned the note and deed of trust to Wells Fargo Home Mortgage, Inc., which later merged into its parent company, Defendant–Appellee Wells Fargo Bank, N.A. As relevant here, the note and the deed of trust both specify that the lender's rights to accelerate the loan and foreclose on the property are limited by the regulations of the Department of Housing and Urban Development (HUD).

In fall 2009, the Rabes encountered financial difficulties: Mr. Rabe lost his vending-machine business, and Mrs. Rabe was laid off from her job with AT&T. The Rabes were unable to find work immediately, and Mrs. Rabe's mother became ill and required home health care until her hospitalization in November 2010. As a result, the Rabes fell behind on their mortgage payments.

The Rabes first received notice of their delinquency in January 2011. Between January and April 2011, the Rabes contacted Wells Fargo on several occasions and, although they attempted to make two payments, they were unable to cure the deficiency. On April 10, 2011, Wells Fargo sent certified letters to Mr. and Mrs. Rabe notifying them that they were in default and informing them that a payment of $2669 would be required by May 10, 2011. The Rabes did not make the requisite payment. In June 2011, the Rabes sent Wells Fargo a check for $1271, along with a note expressing their intent to send another check ten days later. Wells Fargo returned the check and advised the Rabes that it could not process their payment because it intended to foreclose on the property in August 2011. Nevertheless, according to Mr. Rabe, he made a payment of $3200 at Wells Fargo's direction in July 2011, and he

2

unsuccessfully attempted to make a payment of $5000 on August 1, 2011.[1] When Wells Fargo rejected the $5000 payment, it informed Mr. Rabe that he was eligible for a loan modification; in subsequent contacts, Wells Fargo staff confirmed that the Rabes qualified for modification, that the new payment information was forthcoming, and that no foreclosure would occur.

On August 10, 2011, Wells Fargo's foreclosure counsel sent certified letters to Mr. and Mrs. Rabe advising them that their loan had been accelerated and a foreclosure sale had been scheduled for September 6, 2011. On September 1 and 8, 2011, Wells Fargo sent letters to the Rabes regarding their loan-modification status: the first letter indicated that the Rabes did not qualify for a loan modification because the bank "ha[d] not been able to reach [them] to discuss [their] situation"; and the second letter "inform[ed] the Rabes of changes in the status of [their] mortgage assistance" and explained that because the bank, "at this time," could not "help [the Rabes] find a mortgage assistance solution[,] . . . the normal collections process will resume if appropriate." However, because both September letters were erroneously addressed to 758 Holly *Pak* Drive, the Rabes contend that they were unaware of the foreclosure sale and did not receive the letters until after the property had been sold to Wells Fargo.

Upon learning of the September 6 foreclosure sale, the Rabes contacted Wells Fargo in an attempt to negotiate a pay-off of the loan. After gathering conflicting information from Wells Fargo staff, the Rabes received a call on October 21, 2011, indicating that Wells Fargo would agree to rescind the foreclosure if the Rabes appeared at the eviction hearing with a cashier's check for $121,934. The Rabes declined the offer and instead filed suit against Wells

---

[1] The Rabes presented no evidence of these payments, aside from Mr. Rabe's affidavit and a handwritten note of unclear provenance.

No. 14-40931

Fargo in Texas state court on November 3, 2011. They asserted claims for breach of contract, anticipatory breach of contract, unreasonable collection efforts, violations of the Texas Finance Code, and negligent misrepresentation. They sought an accounting, a declaratory judgment, specific performance, quiet title, and damages. Wells Fargo removed and won summary judgment on all of the Rabes' claims. This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction over the Rabes' suit pursuant to 28 U.S.C. §§ 1332 and 1367. We have jurisdiction to review the district court's final judgment pursuant to 28 U.S.C. § 1291.

We review the "grant of summary judgment *de novo*, applying the same legal standards as the district court." *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, "the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007). Like the district court, we construe all facts and evidence in the light most favorable to the nonmovant, and we refrain from making credibility determinations and weighing the evidence. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

## III. DISCUSSION

The Rabes raise four points of error, but all hinge on a single issue: Whether the district court properly concluded that the Rabes failed to establish

a genuine dispute of fact as to whether Wells Fargo breached the HUD regulations incorporated into the note and the deed of trust.

The Rabes premised their claims for breach of contract, violations of the Texas Debt Collection Act (TDCA), trespass to title, and specific performance in relevant part on Wells Fargo's failure to comply with 24 C.F.R. § 203.604(b). This HUD regulation requires a lender to conduct—or "make a reasonable effort to arrange"—a face-to-face meeting with a borrower before three monthly installments are unpaid. Not only did this amount to a breach of the note and deed of trust, the Rabes contend, but it also barred Wells Fargo from accelerating the loan and foreclosing on the property, placing Wells Fargo in contravention of both the TDCA and the Rabes' right to clear title.[2]

Wells Fargo argued to the district court that it was not in violation of § 203.604(b) because the loan was subject to the exception set forth in subsection (c)(2). According to that provision, "[a] face-to-face meeting is not required if . . . [t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either." 24 C.F.R. § 203.604(c)(2). Because the regulation does not define "branch office," Wells Fargo urged the district court to defer to HUD's own interpretation of § 203.604, which, as late as 2012, was found on a Frequently Asked Questions page on HUD's website. There, HUD explained that because "the face-to-face meeting must be conducted by staff that are adequately trained to discuss the delinquency and the appropriate loss mitigation options with the mortgagor," subsection (c)(2) "relates only to those mortgagors living within a 200 mile radius of a servicing office." Wells Fargo then presented an affidavit from a Litigation Support

---

[2] Although the Rabes cited additional grounds for their claims before the district court (e.g., other operative HUD regulations and other misrepresentations concerning foreclosure and loan modification), they do not press these arguments on appeal. We therefore deem them abandoned. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

No. 14-40931

Manager swearing that the bank "did not have a servicing office (an office where employees were trained to discuss delinquency loss mitigation) within 200 miles of the [Rabes'] [p]roperty."

In opposition, the Rabes did not contest Wells Fargo's reliance on the HUD website's interpretation of "branch office"; in fact, their response impliedly accepted that interpretation: "Defendant claims that there is not a servicing center within 200 miles of Plaintiffs' property. Plaintiffs do not have any evidence to dispute that." Then, rather than offering a competing reading of the regulation, the Rabes immediately proceeded to their next argument.

The district court noted that "courts have come to different conclusions as to the weight that HUD's interpretation is entitled," citing divergent opinions from the Northern District of Texas and the Eastern District of Virginia. However, it avoided the deference question by observing that the Rabes "do not dispute Defendant's claim that there is not a servicing center within 200 miles of the property" and holding that the Rabes ultimately "abandoned their argument on this point."

Before this Court, the Rabes argue that § 203.604(c)(2) applies only where there is no local "branch office"—a term with an unambiguous meaning that obviates resort to administrative-law principles—and that Wells Fargo's website lists several branch offices within 200 miles of the mortgaged property. Further, the Rabes point out that HUD has since removed the "servicing office" interpretation from its website and replaced it with the following text: "a face-to-face meeting is not required if . . . [t]here is no office or branch office of the mortgagee or servicer within 200 miles of the mortgaged property."[3]

---

[3] *See General Servicing Frequently Asked Questions*, U.S. Dep't of Hous. & Urban Dev., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/nsc/faqgnsrv (last visited June 4, 2015). Although the Rabes contend that Wells Fargo relied on a 2004 version of the HUD website, pointing to the bank's citation in its brief in support of summary judgment, the printout that Wells Fargo appended to its motion indicates that the bank

No. 14-40931

Notwithstanding the persuasive force of these arguments, the Rabes failed to raise them—or, indeed, even to advert to them—before the district court. "Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate 'extraordinary circumstances.'" *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (quoting *N. Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910, 916 (5th Cir. 1996)). "Extraordinary circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from our failure to consider it." *N. Alamo Water Supply Corp.*, 90 F.3d at 916. Although the issue here is a pure question of law, the Rabes make no effort to argue that our failure to address it would work a miscarriage of justice. In fact, the Rabes neglect even to brief this standard, despite Wells Fargo raising the specter of waiver in its appellate brief. As the burden is on the Rabes to establish extraordinary circumstances justifying a deviation from our "general rule" of waiver, we hold that the general rule prevails and the Rabes' arguments regarding the meaning of § 203.604(c)(2) have been waived.

The only argument not squarely foreclosed by the Rabes' waiver pertains to the letter of September 8, 2011. This letter advised the Rabes that there had been "changes in the status of [their] mortgage assistance" and indicated that because the bank, "at this time, [was] not able to help [the Rabes] find a mortgage assistance solution[,] . . . the normal collections process w[ould] resume if appropriate." The Rabes assert that the letter contained "a false or misleading assertion regarding the character, extent, or amount of the Rabe[s'] debt" in violation of the TDCA, Tex. Fin. Code § 392.304(a)(8), (19), because

---

accessed the website on February 29, 2012. The parenthetical reference to 2004 in Wells Fargo's brief therefore appears to be a citation error.

7

the foreclosure sale had already occurred by the date printed on the letter. Further, the Rabes contend, the letter's use of the phrase "at this time" deceptively "le[ft] open the possibility of a future time when Wells Fargo could assist the Rabes in preserving their home."[4]

We agree with the district court that Wells Fargo was entitled to summary judgment on this claim as well. This Court has held that "[t]o violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading." *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015) (quoting *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013) (per curiam)). To be actionable under § 392.304(a)(8), this statement must relate to the character, extent, or amount of the debt—categories that do not encompass "statements about loan-modification applications and the postponement of foreclosure." *Id.* Further, "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its *modification* and thus they do not state a claim under Section 392.304(a)(19)." *Id.* The letter from Wells Fargo to the Rabes pertains to a loan-modification application, and the Rabes do not explain how the language in question—regarding "changes in the status of [the Rabes'] mortgage assistance," the bank's inability to "find a mortgage assistance solution" "at this time," and "the normal collections process . . . resum[ing] if appropriate"—amount to affirmative statements that are false or misleading. In fact, the Rabes have cited no law in support of their position, either before the district court or on appeal. Accordingly, the Rabes have not discharged their burden to identify a genuine dispute of material fact with respect to this claim. And because all of the Rabes' remaining claims are foreclosed by the waiver of

---

[4] The Rabes raise no other arguments on appeal concerning this letter. They do not, for instance, make any claim that the mislabeling of their address has legal significance. Accordingly, we do not consider this or any other possible error *sua sponte*. *See supra* note 2.

No. 14-40931

their argument concerning 24 C.F.R. § 203.604, we find no reversible error in the grant of summary judgment in favor of Wells Fargo.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.