# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-11567

United States Court of Appeals
Fifth Circuit

**FILED**

March 26, 2021

Lyle W. Cayce
Clerk

JASON DOUGLAS; CHERYL DOUGLAS,

      Plaintiffs–Appellants,

v.

WELLS FARGO BANK, N.A.,

      Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-2588

Before OWEN, Chief Judge, and HAYNES and COSTA, Circuit Judges.

PRISCILLA  R. OWEN, Chief Judge:

Jason and Cheryl Douglas financed their home through a note and deed of trust.  The Douglases missed several payments on the note, so Wells Fargo Bank, N.A. (Wells Fargo)—the holder of both the note and the deed of trust—foreclosed on the home.  The Douglases sued to set aside the foreclosure sale, to cancel the trustee's deed, to quiet title, and for trespass to try title (collectively, the foreclosure-sale claims).   They also filed claims for alleged violations of the Texas Debt Collection Act (TDCA), Texas Financial Code sections 392.301(a)(8) and 392.304(a)(8), and of their due process rights.  In the alternative, the Douglases asserted claims for breach of contract, unjust enrichment, and money had and received.  The district court granted summary

No. 18-11567

judgment on the foreclosure-sale and due process claims, and it dismissed all the other claims. This appeal followed. We affirm.

**I**

In July 2015, Jason and Cheryl Douglas purchased a home. The Douglases financed their purchase with a note and deed of trust guaranteed by the Department of Veterans Affairs (VA). Both the note and the deed of trust were later transferred to Wells Fargo. In September 2016, the Douglases contacted Wells Fargo to have their monthly payments automatically withdrawn from their bank account. Wells Fargo collected payments from the Douglases' bank account in September and October of 2016. After October 2016, however, the payments stopped. The Douglases allege they did nothing to stop the payments. Wells Fargo alleges that it does not know the reason the payments stopped.

The Douglases—allegedly unaware of the stoppage—missed their payments for November 2016, December 2016, January 2017, February 2017, and March 2017. According to both parties, the monthly payment for principal, interest, and escrow amounted to $3,054.51 for each of these months. On January 17, 2017, Wells Fargo sent a letter advising the Douglases of $15,272.55 in past due payments—a sum equal to five monthly payments of $3,054.51. The Douglases argue that they "were only behind on three payments at that point" and protest that "based on three missed monthly payments of $3,054.51, the amount of past due payments should only have been $9,163.53." Wells Fargo points out that "the record is silent" as to whether the Douglases made all their payments between the loan's initiation in 2015 and September 2016.

On March 3, 2017, Wells Fargo sent a second letter. This time, the letter advised the Douglases of $21,381.57 in past due payments—a sum equal to seven monthly payments. The Douglases argue that this letter was also two

months overstated.  Sometime that same month, Cheryl Douglas allegedly called a representative at Wells Fargo and made a payment of $14,000. According to Cheryl Douglas, "[t]he representative said that Wells Fargo would accept the payment as part of a repayment plan, or payment to bring the loan current."  She claims that she gave the representative their "bank account information" and that the "representative stated that she would automatically draft the $14,000 payment from [their] bank account."

Allegedly unbeknownst to the Douglases, Wells Fargo never drafted the $14,000.  The Douglases then received an escrow review letter dated March 13, 2017 advising of a $657.07 shortage in their escrow account balance.  The letter stated: "Starting May 1, 2017 your new mortgage payment amount will be $3,199.86."  This statement was directly below a bolded heading which read: "No action required."

Approximately one month later, on April 10, 2017, Wells Fargo—through its foreclosure counsel, Bonial & Associates (Bonial)—sent the Douglases a notice of acceleration and a notice of foreclosure sale scheduled for May 2, 2017. The notices were sent via first-class and certified mail, return receipt requested.  The notice sent via certified mail was returned to Wells Fargo with the notations "unclaimed" and "unable to forward."  The Douglases vigorously deny ever receiving notice.

In May 2017, Wells Fargo initiated foreclosure on the home and purchased the property at the foreclosure sale, allegedly without the Douglases' knowledge.  The Douglases have not made payments on the loan since October 2016; however, they continue to reside on the property.

The Douglases filed this lawsuit in Texas state court in August 2017. Wells Fargo removed the case to federal court based on diversity jurisdiction. The Douglases' first amended complaint pleaded (1) "a cause of action to set aside the foreclosure sale," (2) "breach of contract, or alternatively . . . money

had and received and unjust enrichment," (3) "negligent misrepresentation," and (4) "suit to quiet title" and "trespass to try title" against the VA. It also asserted claims against Wells Fargo for alleged violations of the TDCA, sections 392.301(a)(8) and 392.304(a)(8).

Wells Fargo moved to dismiss. The district court granted the motion, dismissing all of the Douglases' claims with prejudice except the section 392.304(a)(8) claim, which the district court dismissed without prejudice and with leave to amend. The district court clarified the extent of the dismissal in a later order, stating that Wells Fargo's motion to dismiss "did not address the Douglases' suit to set aside the foreclosure and cancel the trustee's deed." Therefore, those claims also survived.

The Douglases then filed their second amended complaint, repleading the section 392.304(a)(8) claim and reasserting their suit to set aside the foreclosure sale and cancel the trustee's deed. They also added quiet-title and trespass-to-try title claims against Wells Fargo. Wells Fargo moved to dismiss for a second time. Wells Fargo argued that the alleged oral agreement to draft $14,000 from the Douglases' bank account could not support a section 392.304(a)(8) claim because it is barred by the statute of frauds. The Douglases' response made no mention of the statute of frauds.

The district court dismissed the Douglases' section 392.304(a)(8) claim with prejudice. It acknowledged that "[t]he Douglases thought that their loan was no longer delinquent based on the representative's statement that the $14,000 payment would be automatically withdrawn from their bank account and the escrow shortage letter's indication that no action was required." However, the district court ultimately agreed with Wells Fargo, reasoning that "[Wells Fargo's] oral agreement to accept $14,000 from the Douglases is

4

unenforceable under the statute of frauds because it modified the terms of the loan agreement."

The district court did, however, allow the Douglases to replead their foreclosure-sale claims.  The Douglases accepted the invitation and filed their third amended complaint.  Wells Fargo then moved for summary judgment, attaching the following as evidence of proper service: (1) a declaration from a managing attorney at Bonial stating that notice had been sent; (2) the notice letters themselves; and (3) scans of certified mail envelopes bearing the Douglases' names and address.  The Douglases responded, arguing that their failure to receive notice was enough to raise a genuine dispute of material fact. In their response to summary judgment, they also raised a federal constitutional due process claim based on Wells Fargo's failure to provide notice.  This was the first time the Douglases had raised such a claim.

The district court granted summary judgment for Wells Fargo on the foreclosure-sale claims.  The court concluded that there was no genuine dispute over whether Wells Fargo properly sent notice in compliance with both the deed of trust and the Texas Property Code.  The district court then turned to the due process claim.  It acknowledged the split in Fifth Circuit precedent on how to treat claims raised for the first time on summary judgment, then rejected the claim under both lines of authority.

The Douglases timely appealed both dismissal orders, the summary judgment order, and the final judgment.

## II

The Douglases' argument concerning the foreclosure-sale claims hinges entirely on their allegation that Wells Fargo "violated the deed of trust and the Texas Property Code" by failing to send the proper notices before foreclosing and selling their home at the foreclosure sale.  They argue that their non-

receipt of notice is at least some evidence—enough to create a factual dispute at summary judgment—that notice was improper.

The Douglases' deed of trust states that "[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail . . . ." Texas Property Code section 51.002(e), which governs service of notice to a borrower before a foreclosure sale, states:

> Service of a notice . . . by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.[1]

Importantly, the Douglases do not argue that the deed of trust or the Texas Property Code requires receipt of service. Indeed, they do not argue that the deed of trust or the Texas Property Code requires anything more than constructive notice. Rather, they contend that their non-receipt of notice is alone sufficient evidence to survive summary judgment.

We rejected this same argument in *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*[2] In *LSR*, the deed of trust—like the Texas Property Code—only required constructive notice.[3] Nonetheless, the appellant claimed that non-receipt of notice was enough evidence to create a genuine dispute of fact and defeat summary judgment.[4] We summarily rejected the argument, explaining

---

[1] TEX. PROP. CODE ANN. § 51.002(e); *see also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing § 51.002(e)) ("[The lender] satisfied its burden of proof by presenting evidence of mailing the notice and an affidavit to that effect. There is no requirement that [the borrower] receive notice.").

[2] 835 F.3d 530 (5th Cir. 2016).

[3] *Id.* at 534; *see also* § 51.002(e); *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("The general purpose of the statute is to provide a minimum level of protection for the debtor, and it provides for only constructive notice of the foreclosure.").

[4] *See LSR*, 835 F.3d at 534.

that "the dispositive inquiry 'is not *receipt* of notice, but, rather, *service* of notice.'"[5]  "For that reason, [Texas courts] have held there to be no genuine dispute as to the sending of notices required under [s]ection 51.002 [of the Texas Property Code] when the sole contravening evidence is the homeowner's affidavit asserting non-receipt."[6]

Here, as in *LSR*, the Texas Property Code and the deed of trust only required constructive notice.[7]  As evidence of proper service, Wells Fargo provided the following: (1) a declaration from a managing attorney at Bonial stating that notice had been sent; (2) the notice letters themselves; and (3) scans of certified mail envelopes bearing the Douglases' names and address. This evidence satisfies both the deed of trust's and the Texas Property Code's constructive service requirements.  The fact that the Douglases did not receive notice does not change this conclusion.

The Douglases point to *Sauceda v. GMAC Mortgage Corporation*,[8] a Texas court of appeals case which held that homeowners' testimony of non-receipt of notice created a fact issue as to whether they were properly served with the required notice under the Texas Property Code.[9]  But *Sauceda* is distinguishable.[10]  In *Sauceda*, "the mortgage servicer provided no supporting documentation showing that it had served notice."[11]  Here, as in *LSR*, Wells Fargo provided supporting documentation—in addition to testimony—showing

---

[5] *Id.* (quoting *Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-00708-CV, 2008 WL 2209703, at *4 (Tex. App.—Houston [1st Dist.] May 29, 2008, no pet.)); *see also WMC Mortg. Corp. v. Moss*, No. 01-10-00948-CV, 2011 WL 2089777, at *7 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.) ("The purpose of notice under Section 51.002 is to provide a minimum level of protection to the debtor, and actual receipt of the notice is not necessary.").

[6] *LSR*, 835 F.3d at 534 (citing *Adebo*, 2008 WL 2209703, at *4).

[7] *See id.*

[8] 268 S.W.3d 135 (Tex. App.—Corpus Christi 2008, no pet.).

[9] *See id.* at 140.

[10] *See LSR*, 835 F.3d at 534-35 (discussing *Sauceda*).

[11] *Id.* at 535.

No. 18-11567

it served proper notice.[12]  Specifically, Wells Fargo provided the notice letters themselves as well as scanned copies of the certified mail envelopes bearing the Douglases' names and address.

In short, the Douglases' "self-serving protestation[] of non-receipt of notice" is not enough to create a genuine dispute at summary judgment.[13]  The undisputed evidence shows that Wells Fargo properly served notice.  The district court did not err in granting summary judgment on the Douglases' foreclosure-sale claims.

## III

The Douglases next argue that the district court erred in concluding that they improperly raised their constitutional due process claim.  They argue that the fact that they raised the issue for the first time in response to Wells Fargo's motion for summary judgment should not defeat their claim.  According to the Douglases, unpleaded issues can be properly decided on summary judgment.  To support this assertion, the Douglases cite a footnote from *Apex Oil Company v. Archem Company*[14] and a column from The Federal Lawyer magazine.[15]

We have previously addressed the issue of new claims raised for the first time in response to a motion for summary judgment.  We have taken two different approaches.  The first approach states that a "claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."[16]  The second approach instructs the district court to treat a new claim raised in response to a motion

---

[12] *See id.*

[13] *Id.*

[14] 770 F.2d 1353 (5th Cir. 1985).

[15] John R. Knight, *Rule 56 Revisited: The Effect of Seeking or Opposing Summary Judgment on the Basis of Unpleaded Claims or Defenses*, 43 Sept. FED. LAW 15 (1996).

[16] *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).

for summary judgment as a request for leave to amend.[17]  The district court must then determine whether leave should be granted.[18]

In this case, the district court recognized the first approach, indicating a new claim raised for the first time in response to summary judgment is not properly before the court.  It then conducted the relevant analysis under the second approach, analyzing the Douglases' claim as a request for leave to amend.  When a party wishes to add a new claim after the deadline for amending the pleadings has passed, the party generally must move for leave to amend.[19]  Leave to amend a complaint requires modifying the scheduling order, which can only be granted for good cause.[20]  If the party shows good cause, the court may then consider a variety of factors under Rule 15(a)(2)'s more liberal pleading standard.[21]    Included among these factors are (1) "repeated failures to cure deficiencies by amendments previously allowed," and (2) "futility of the [proposed] amendment."[22]

In conducting the leave-to-amend analysis, the district court first determined that any request for leave would be tardy, given that the Douglases already had three prior opportunities to amend.  It then determined that, even if the Douglases were granted leave, the amendment would be futile.  The Douglases' new due process claim hinged on the same lack of notice at the center of the foreclosure-sale claims.

---

[17] *See Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam) ("Generally, a new claim or legal theory raised in response to a dispositive motion should be construed as a request for leave to amend the complaint, and the district court should determine whether leave should be granted." (citing *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir.2008))).

[18] *Id.*

[19] *See* FED. R. CIV. P. 16(b)(4).

[20] *See id.*

[21] *See Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005).

[22] *Id.*

No. 18-11567

Regardless of whether the Douglases' due process claim is characterized as improperly before the court or as a request for leave to amend, the result is the same—the claim was properly denied by the district court. As the district court recognized, not only is the claim tardy but it is also inextricably tied to the non-meritorious foreclosure-sale claims. The district court did not err.

## IV

The Douglases contend that Wells Fargo violated Texas Finance Code section 392.301(a)(8) by "threatening to foreclose, and then actually foreclosing, when it was prohibited by law from doing so." According to the Douglases, Wells Fargo was "prohibited by law from foreclosing" because it "failed to provide [the Douglases] with the prescribed notice under Texas law." As previously discussed, Wells Fargo properly served notice in accordance with the deed of trust and the Texas Property Code. Therefore, contrary to the Douglases' allegations, Wells Fargo was not prohibited by law from foreclosing. The district court did not err in dismissing this TDCA claim.

## V

The Douglases also contend that Wells Fargo violated Texas Finance Code section 392.304(a)(8) by misrepresenting the amount of past due payments in the January 17, 2017 and March 3, 2017 letters. They argue that Wells Fargo violated section 392.304(a)(8) by orally agreeing to draft $14,000 from their bank account and then failing to do so. The Douglases do not argue that the March 13 no-action-required letter violated section 392.304(a)(8). Although they passingly reference the March 13 no action-required letter in the statement of facts, there is no mention of the no-action-required letter in any of their discussion of the section 392.304(a)(8) claim. In any event, to the extent the Douglases intended to rely on the March 13 no-action-required letter

No. 18-11567

to support the section 392.304(a)(8) claim, they have abandoned the argument by failing to brief it adequately.[23]

Texas Finance Code section 392.304(a)(8) provides that "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt . . . ."[24] Intent is not required to violate this provision.[25]  In fact, "courts have recognized that facially innocuous misrepresentations made in the course of an attempt to collect a debt constitute a violation of [s]ection 392.304(8)."[26] However, we have also indicated that misrepresenting the amount of debt is not enough for a section 392.304(a)(8) claim; the misrepresentation must cause borrowers to "*think differently* with respect to the character, extent, amount, or status of their debt."[27]

The Douglases allege that Wells Fargo violated section 392.304(a)(8) by misrepresenting the amount of past due payments in both the January 17, 2017 letter and the March 3, 2017 letter.  They claim that they were "only behind on three (3) payments [as of January 17, 2017]—November of 2016, December of 2016, and January of 2017"—such that "[i]t was fraudulent, deceptive, and misleading for [Wells Fargo] to state that it was attempting to collect amounts for past due payments, that represented more than $6,000 that was actually past due."  Likewise, the Douglases allege that as of March 3, 2017 they were "only behind on five (5) monthly payments" such that "[i]t was

---

[23] *See United States v. Scroggins*, 599 F.3d 433, 446-47 (5th Cir. 2010) ("A party that asserts an argument on appeal, but fails to adequately brief it, is deemed to have waived it. It is not enough to merely mention or allude to a legal theory." (internal citations omitted)).

[24] TEX. FIN. CODE ANN. § 392.304(a)(8).

[25] *See McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 480-81 (5th Cir. 2015).

[26] *Id.* (collecting cases from several district courts).

[27] *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (emphasis added).

fraudulent, deceptive, and misleading for [Wells Fargo] to state that it was attempting to collect amounts for past due payments, that represented more than $6,000.00 that was actually past due."

However, even assuming the letters were facially inaccurate, the inaccuracies did not lead the Douglases to *think differently* with respect to the amount actually past due. The Douglases were aware—despite having received these letters—that they had a mortgage debt, and that they had defaulted on that debt. Neither the January 17 nor the March 3 letters changed these understandings. In fact, the Douglases do not allege that they ever believed these letters to be an accurate representation of their debt; they merely claim that the letters overstated the amount past due. The letters did not change the Douglases' thinking in any way with respect to their debt; therefore, they cannot serve as the basis for their section 392.304(a)(8) claim.[28]

Besides these two letters, the Douglases' only other support for their section 392.304(a)(8) claim is a March 2017 telephone conversation in which a Wells Fargo representative purportedly agreed to accept a $14,000 payment "as part of a repayment plan, or payment to bring the loan current." The district court concluded that the statute of frauds barred consideration of the alleged oral agreement; therefore, it could not serve as a basis for the Douglases' section 392.304(a)(8) claim. The Douglases contend that this conclusion is erroneous. We disagree.

Under the statute of frauds, "[a] loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative."[29] There is no dispute that the loan

---

[28] *See id.*

[29] TEX. BUS. & COM. CODE ANN. § 26.02(b).

agreement in this case is subject to the statute of frauds. The question is whether the statute of frauds bars consideration of the alleged oral agreement under the TDCA.

In *Williams v. Wells Fargo Bank, N.A.*, an unpublished Fifth Circuit opinion, we determined that an alleged oral agreement subject to the statute of frauds is alone insufficient to support a TDCA claim.[30] In *Williams*, the plaintiffs brought several claims against Wells Fargo pertaining to the bank's foreclosure on their property, including claims under the TDCA.[31] To support these claims, the plaintiffs relied on an alleged phone conversation with an agent from Wells Fargo wherein the agent purportedly agreed to modify the plaintiffs' loan.[32] However, the plaintiffs failed to allege any damages or factual misrepresentation independent of the alleged oral agreement, which we had already determined to be barred by the statute of frauds.[33] Given this failure, we concluded that the plaintiffs had failed to state a claim under the TDCA.[34] We reasoned: "To allow [the plaintiffs] to recover under the TDCA would be to 'allow [them] to do indirectly what [they] could not by law do directly.'"[35]

The reasoning in *Williams* applies with equal force here. Like the plaintiffs in *Williams*, the Douglases have failed to allege any independent support for their TDCA claim besides an alleged oral agreement. As discussed above, the Douglases cannot rely on either the January 17 or the March 3

---

[30] *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014) (per curiam) ("The Williamses have not alleged any damages outside of the alleged oral agreement to modify their loan or any other factual misrepresentation independent of the oral loan modification which we have already determined to be barred by the statute of frauds" (citing *Kruse v. Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 794-95 (N.D. Tex. 2013))).

[31] *Id.* at 236-38.

[32] *Id.* at 236, 240-41.

[33] *Id.* at 241.

[34] *Id.*

[35] *Id.* (second and third alterations in original) (quoting *Kruse*, 936 F. Supp. 2d at 795).

letters to support their section 392.304(a)(8) claim because neither letter caused the Douglases to think differently with respect to their debt. These two letters aside, the Douglases' only remaining allegation in support of their section 392.304(a)(8) claim is the purported oral agreement to modify the terms of the loan agreement, which the Douglases concede is subject to the statute of frauds. This alleged oral agreement cannot alone sustain the Douglases' claim under the TDCA.[36] There must be some allegation independent of the oral agreement to sustain the claim. The Douglases have made no such allegation here. Thus, the Douglases' section 392.304(a)(8) claim fails.

With great respect, we disagree with the dissenting opinion regarding the alleged misrepresentation by a Wells Fargo employee that Wells Fargo would accept a payment of $14,000. In the district court and in their briefing in this court, the Douglases have asserted that as of March 3, 2017, they were in arrears on only five monthly payments, totaling $15,272.55, and that the March 3, 2017 letter from Wells Fargo was mistaken in asserting that the past due payment amount was $21,381.57. They additionally have alleged that "[a]lso in March 2017," the Douglases called Wells Fargo to make a payment of $14,000, and "the representative said that [Wells Fargo] would accept the payment as part of a repayment plan, or payment to bring the loan current." This means that Wells Fargo allegedly agreed to accept *less* than the minimum amount the Douglases admit they owed, which they say was $15,272.55. Agreeing to accept $14,000 as either part of a repayment plan or to bring the loan current would constitute an agreement to modify the existing loan agreement, under which the Douglases admit that they owed more than $14,000 at the time that their offer was allegedly accepted. In order for such

---

[36] *See id.* at 240-41.

an acceptance to be an actual, enforceable acceptance, it had to be in writing under Texas law.

To the extent that the dissent views the misrepresentation as nothing more than Wells Fargo's broken promise to withdraw $14,000 from the Douglases' bank account, such a claim would not be actionable. As we have explained, section 392.304(a)(8) covers misrepresentations about "the character, extent, or amount of a consumer debt."[37] A statement that the bank would execute a transfer from the Douglases' bank account, without more, is not a representation about the "character, extent, or amount of a consumer debt."[38] Indeed, the Douglases recognize that the claim has to be that Wells Fargo "agreed to accept [the Douglases'] $14,000-payment to bring their account current." While that makes the representation one about the extent or amount of the debt, it means that the statute of frauds applies, as we have explained: if the Wells Fargo representative said the bank would modify the loan by accepting less than the amount due, then that would be an impermissible oral modification of the contract.

The alleged "misrepresentation" under the TDCA is the agreement to accept a $14,000 payment. The mental anguish and attorney's fees that the Douglases seek to recover are based entirely on Wells Fargo's failure to honor the agreement that it allegedly made, an agreement that is unenforceable under the statute of frauds. The Douglases cannot rely on an unenforceable oral agreement as the basis for a claim under the TDCA. "To allow [the

---

[37] TEX. FIN. CODE ANN. § 392.304(a)(8).
[38] *Id.*

15

plaintiffs] to recover under the TDCA would be to 'allow [them] to do indirectly what [they] could not by law do directly.'"[39]

## VI

Finally, the Douglases request this court revive their claims for breach of contract, or alternatively, unjust enrichment and money had and received. The Douglases' argument rests on the theory that Wells Fargo abandoned acceleration on the loan. According to the Douglases, the $14,000 alleged oral agreement with Wells Fargo to bring their loan current and the subsequent March 13, 2017 no-action-required letter were "so inconsistent with [Wells Fargo's] prior acceleration such that it could be construed to have abandoned such acceleration." This argument is not persuasive. Wells Fargo did not accelerate the loan until April 10, 2017—nearly a month after the March 13, 2017 letter. Wells Fargo could not abandon acceleration of the loan because the loan had not yet been accelerated. The district court properly dismissed these claims.

\*     \*     \*

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[39] *Williams*, 560 F. App'x at 541 (second and third alterations in original) (quoting *Kruse*, 936 F. Supp. 2d at 795).

No. 18-11567

HAYNES, Circuit Judge, concurring in part and dissenting in part:

I respectfully dissent from the majority opinion's resolution of the Douglases' claim under Texas Financial Code § 392.304(a)(8), known as the Texas Debt Collection Act ("TDCA").[1]   In particular, I would reverse the dismissal of the Douglases' claim that Wells Fargo violated the TDCA by misrepresenting, in a March 2017 phone call, that $14,000 would be automatically deducted from the Douglases' account to pay off the bulk of their past-due mortgage payments.

The majority opinion treats any TDCA claim based off that phone call as barred by *contract law* principles: it characterizes the call as generating an "oral agreement," frames the Douglases' claim as an attempt to effectuate that agreement, and concludes that the Douglases' claim cannot proceed because the agreement was not in writing as required by the statute of frauds.  That *might* be the right analysis if the Douglases were merely asserting that the phone call contractually bound Wells Fargo in some way.[2]  *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 240–41 (5th Cir. 2014) (per curiam) (concluding that a TDCA claim that effectively sought only to enforce an oral modification of a loan was barred because "the statute of frauds acts to bar *certain* claims of misrepresentation" (emphasis added)); *Kruse v. Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 794–95 (N.D. Tex. 2013) (same).  But it is the

---

[1] I concur with the majority opinion in all other respects.

[2] The claim in this case does not seem to address some kind of new oral contract which would be barred by the statute of frauds.  Instead, it deals with payment of what was owed under an existing contract.  *Cf., e.g.*, *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 720, 726 (5th Cir. 2013) (concluding that a loan modification was subject to the statute of frauds). Because I conclude that the Douglases stated a TDCA claim independent of any agreement, I conclude that the statute of frauds analysis is the wrong path.

No. 18-11567

wrong analysis here for a simple reason: the Douglases' issues with the phone call are distinct from the breach of any oral agreement.

The Douglases claim that Wells Fargo told them on the call that it would "automatically draft" a required payment from their account. That representation, coupled with a subsequent letter from Wells Fargo indicating that "no action was required," led the Douglases to believe that their loan was current such that Wells Fargo would not be foreclosing on their house. They were blindsided when Wells Fargo did just that less than two months later.[3] *Cf. Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 723 (5th Cir. 2013) (concluding that a set of plaintiffs failed to state a § 392.304(a)(8) claim in part because the plaintiffs were "always aware" that they were in default).

Separate and apart from any agreement, Wells Fargo's alleged misrepresentation made the Douglases "think differently" about the "character, extent, amount, or status of their debt" in two respects. *Miller*, 726 F.3d at 723. It made them think, first, that the required payment would be drawn, and, second, that the payment would bring their account current. Those impressions concern the character and status of their debt (from their perspective, their payment was pending and the loan was therefore no longer delinquent), as well as their debt's extent and amount (they thought they had

---

[3] To be sure, the Douglases could have realized that the "no action required" letter related only to their monthly escrow payment rather than the impending foreclosure on their house. They also could have independently checked their account to see if the payment was actually drawn. But our analysis at this stage is only for plausibility, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and it is plausible that the Douglases thought the "no action required" letter—which the complaint suggests was the *only* communication Wells Fargo had with them between the phone call and the foreclosure—had confirmed Wells Fargo's representations on the call. It is also plausible that, whether or not they independently checked their account, the Douglases believed that the payment was (or would be) drawn before the loan was accelerated and the house foreclosed on less than two months later. Whether the Douglases *actually* believed those things is for later stages of litigation.

no present payment obligations and, more broadly, that their total balance would be reduced by $14,000).[4]

The upshot: the phone call plausibly muddled the Douglases' understanding of whether they had a past-due mortgage debt, how much they owed, and whether they were in default. These are paradigmatic indicia of a misrepresentative statement. *Cf. id.* (concluding that a TDCA claim failed because the plaintiffs always knew the answers to those questions). What's more, it plausibly made them *behave* differently, too: without that statement, the Douglases may well have tried to make the payment some other way. The phone call, in other words, lulled the Douglases into a false sense of security about their mortgage. The TDCA is supposed to guard against exactly that sort of conduct. *See* TEX. FIN. CODE ANN. § 392.304(a)(8) (prohibiting "misleading representation[s]" that "misrepresent[]" borrowers' obligations).

Further illustrating that the Douglases' TDCA claim takes issue with the alleged misrepresentation itself is the fact that the Douglases sought to recover only for damages they allegedly sustained as a result of the misrepresentation, specifically, damages for the mental anguish (and attorneys' fees) they allegedly experienced not to enforce an allegedly modified contract. *Cf. Williams*, 560 F. App'x at 241 (concluding that the statute of

---

[4] Both the execution-of-transfer aspect and the loan-delinquency aspect to Wells Fargo's alleged statement plausibly constitute misrepresentations; it is plain that assertions about the steps a defendant might take to accommodate delinquency can plausibly make a party think differently about their obligations. *See, e.g.*, *Davis v. Wells Fargo Bank, N.A.*, 976 F. Supp. 2d 870, 886 (S.D. Tex. 2013) (concluding that a bank representative's statement about the bank's willingness to accommodate a delinquency—that the bank "did not care whether or not [the plaintiff] defaulted, or was foreclosed on, because [the bank] was guaranteed to get paid . . . through the federal loan guarantee"—was a misrepresentation sufficient to state a claim under § 392.304(a)(8)); *see also Gomez v. Wells Fargo Bank, N.A.*, No. 3:10-CV-0381-B, 2010 WL 2900351, at *5 (N.D. Tex. July 21, 2010) (concluding that a bank's statements that the plaintiff no longer needed to make mortgage payments and that another individual did not have to sign a loan modification document misrepresented the "status or nature of [the defendant's] services or business" under § 392.304(a)(14)).

frauds barred a TDCA claim in part because the plaintiffs did not allege "any damages outside of the alleged oral agreement to modify their loan"). That is, the Douglases sought redress for the downstream effects that their belief that the payment would be drawn and that the foreclosure would be avoided had on their mental health—not for any contractual failure to set up a repayment plan or to accept $14,000 to make the loan current.[5] *See generally Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001) (concluding that non-contract claims are not subject to the statute of frauds if they seek "out-of-pocket damages incurred in relying upon [a defendant]'s alleged misrepresentations").

Of course, the Douglases were never actually current on their loan. As the majority opinion ably describes, because the Douglases owed over $15,000, it would have taken an enforceable modification of the loan agreement for their $14,000 payment to actually bring the loan current as Wells Fargo allegedly said it would. But that's precisely what makes Wells Fargo's alleged statement a misrepresentation: although Wells Fargo affirmatively told them otherwise, the Douglases remained delinquent on their mortgage. That sort of statement is undeniably actionable as a misrepresentation claim; it is a violation of the TDCA to falsely tell borrowers that they either do or do not have to do something with respect to their debt—*even if* the false assertion is inconsistent with the borrowers' actual contractual obligations. *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475, 480 (5th Cir. 2015).[6] Put another way,

---

[5] Indeed, the Douglases could not even seek mental anguish damages on a breach of contract claim. *Compare Latham v. Castillo*, 972 S.W.2d 66, 71 (Tex. 1998) (noting that mental anguish damages "are not recoverable under a breach of contract cause of action"), *with McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 482 (5th Cir. 2015) ("Damages for mental anguish are recoverable under the TDCA." (quoting *Monroe v. Frank*, 936 S.W.2d 654, 661 (Tex. App.—Dallas 1996, writ dism'd w.o.j.))).

[6] The typical TDCA case involves allegations that a defendant *overstated* the plaintiffs' obligations, usually by charging the plaintiffs more than they were obligated to pay under their contracts. *See, e.g., McCaig*, 788 F.3d at 480 (concluding that the defendant's false assertions that the plaintiffs needed to pay $11,900 and various late fees, even though the

where Wells Fargo misrepresents what it agrees to do such a claim is not necessarily contractual in nature: falsely representing that a loan is not delinquent can also give rise to an independent misrepresentation claim. *See id.* at 475.

By overlooking the Douglases' focus on the nature and effects of Wells Fargo's alleged misrepresentation, the majority opinion concludes that Douglases' TDCA claim fails simply because they would be unable to sustain a hypothetical breach of contract claim on the same allegations. In short, the majority opinion treats an enforceable contract as a prerequisite for a TDCA claim. That approach is impossible to reconcile with the TDCA's plain application to non-contractual and extra-contractual statements; on its face, the statute requires that a plaintiff allege that the defendant made a "*representation*"—not that the parties had any enforceable agreement. TEX. FIN. CODE ANN. § 392.304(a) (emphasis added). It is also at odds with binding precedent, which clearly anticipates that TDCA and contract claims can exist independently from each other. *See McCaig*, 788 F.3d at 475 ("If [the defendant] violated the TDCA, it can be held liable for those violations even if there are contracts between the parties, and even if [the defendant]'s prohibited conduct also amounts to contractual breach."). Indeed, there is no

---

plaintiffs were not actually obligated to do so, supported a jury verdict on a § 392.304(a)(8) claim); *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632–33 (N.D. Tex. 2010) (denying summary judgment on a plaintiff's TDCA claim because the defendant unnecessarily required the plaintiff to pay for force-placed insurance).

But *understating* obligations, as here, can be just as pernicious. As in this case, telling plaintiffs that they owe less than they thought can cause them to face unexpected loan acceleration and foreclosure—not to mention other harms like unanticipated late fees. *See, e.g.*, *Gomez*, 2010 WL 2900351, at *5 (concluding that a plaintiff adequately stated a misrepresentation-of-services TDCA claim in part by alleging that the defendant told her she no longer needed to make mortgage payments). Whether such an understatement is an actionable misrepresentation under the TDCA is plainly a separate question from whether, as a matter of contract law, the plaintiffs' obligations *actually* changed in any way. *McCaig*, 788 F.3d at 475.

real purpose for many of Texas's consumer protection statutes, specifically those in the area of debt collection, if those statutes are just duplicative of contractual remedies already available to consumers.

I conclude that the Douglases plausibly alleged that the March 2017 phone call constituted a representation actionable under the statute. Accordingly, I would reverse the district court's judgment dismissing the Douglases' TDCA claim. I therefore respectfully dissent from Section V of the majority opinion.